Motion to affirm judgment denied October 17, 1922, argued December 12, 1923, reversed and remanded February 5, rehearing denied May 13, 1924.

# EMMA HARRISON v. F. R. BEALS.

(222 Pac. 728.)

**Bills and Notes—"Promissory Note" Defined—Unless Otherwise Provided, Maker Agrees to Perform All Affirmative Acts Required to Fulfill Contract.**

1. A "promissory note" is an agreement in writing by which maker promises to pay a certain sum of money absolutely and at all events, and, unless otherwise provided, as between himself and payee, the maker assumes to perform all the affirmative acts required for the fulfillment of the contract.

**Bills and Notes—Acceleration of Principal on Maker's Default in Interest Held not a Forfeiture.**

2. A provision in a note giving holder the option to declare the principal due on default in interest is not a provision for a forfeiture, but it is one of the terms of the contract to be construed and enforced as any other condition.

**Bills and Notes—As Between Original Parties, Presentment of Note for Payment not Required—Presentment Unnecessary to Accelerate Maturity—"Primarily Liable."**

3. Presentment of a negotiable instrument for payment is required only to charge drawer and indorsers and not in any event to charge maker, the maker being the "person primarily liable on the instrument" within Section 7862, Or. L., and it was therefore error to charge that presentment was necessary before payee could exercise option to declare note due for default in interest.

**Bills and Notes—Allegation That Maker Mailed Interest Prior to Due Date Held Immaterial.**

4. In payee's action to enforce the provision of a note accelerating principal for maker's failure to pay interest, maker's allegation that prior to the due date he mailed a draft for the interest, which was not received by holder, *held* immaterial, as maker was not required nor privileged to pay anything prior to the due date, especially where maker admitted that the allegation was erroneous, in that he did not send the draft to payee.

**Bills and Notes—Allegation That Note was not at Place of Payment Before Nor After Interest Date Held Demurrable.**

5. In payee's action to enforce the provision of a note accelerating principal for maker's default in interest, maker's allegation that the note was not at the place of payment "for some time before nor for some time after" interest date, as against demurrer, did not exclude the possibility of its presence at such place on the interest date.

Tender—Note Payable at Certain City Held not Payable at "Special Place" Within Statute—"Tender."

6. A promissory note, payable at a certain city, is not payable at a "special place," within Section 7862, Or. L., which makes ability and willingness to pay at a special place equivalent to a tender of payment; "tender" meaning to produce and proffer unconditionally, as money or other specific thing, in payment or performance of an obligation.

Bills and Notes—Payee's Option to Accelerate Maturity for Maker's Default Does not Require Notice of Election.

7. An option in payee of a note to accelerate payment of the principal on maker's default in interest, though not self-executing, does not require notice to maker before action to enforce it is commenced.

Tender—Allegation That Maker Tendered Interest, not Alleging Amount Thereof, Held Insufficient.

8. In payee's action to enforce a provision of a note giving holder the option to declare principal due on maker's default in interest, maker's allegation that after the action was commenced he tendered payee the amount of such interest was insufficient, in the absence of a statement of the specific amount tendered, in dollars and cents.

Costs—Tender of Overdue Interest After Action Brought on Note Held Too Late.

9. The tender of unpaid interest twelve days after it was due and one day after action was commenced to enforce payee's option to mature the note on maker's default in interest, was too late to give maker the benefit of Section 574, Or. L., entitling defendant to costs when he tenders plaintiff the amount found due before action was brought, and it was not an offer of compromise under Section 532, providing that defendant at any time before trial may offer to allow judgment to be given against him for a specific sum of money.

Bills and Notes—Payee Who Assigned Note as Collateral Held not "Holder" Within Acceleration Provision.

10. Where payee of notes by acknowledged written assignment transferred them as collateral, she was not a "holder" within a provision that on default of interest the notes should mature at holder's election, and she could not exercise the option.

Bills and Notes—Legal Effect of Assignment for Court.

11. Under Section 136, Or. L., it was for the court to decide the legal effect of a written assignment of promissory notes as collateral.

6. When instrument deemed payable at a "special place" within provision of uniform negotiable instruments law making ability and willingness to pay at such place equivalent to tender, see note in 24 A. L. R. 1050.

See 8 C. J. 41, 415, 417, 603; 15 C. J. 82, 83; 38 Cyc. 168.

From Tillamook: GEO. R. BAGLEY, Judge.

Department 1.

REVERSED AND REMANDED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Hodges & Gay,* with an oral argument by *Mr. C. M. Hodges.*

For respondent there was a brief over the names of *Messrs. Botts & Winslow* and *Messrs. Wood, Montague & Matthiesen,* with an oral argument by *Mr. H. T. Botts.*

BURNETT, J.—On April 7, 1920, the defendant made, executed and delivered to the plaintiff ten promissory notes for $1,000 each due annually in succession, beginning five years after date with interest at 6 per cent per annum payable semi-annually after date. At the same time he made, executed and delivered to the plaintiff an additional note of $12,289 due fifteen years after date. Each of the eleven notes was couched in the same terms except as to amount and date of maturity.

This action was commenced in the Circuit Court for Tillamook County on October 18, 1921, by the filing of the complaint. This feature of the case is affected by Section 51, Or. L., reading thus:

"Actions of law shall be commenced by filing a complaint with the clerk of the court and the provisions of Sections 14 and 15 shall only apply to this subject for the purpose of determining whether an action has been commenced within the time limited by this Code * * ."

There are eleven causes of action stated in the complaint, all in the same terms of averment except as to

the amount and maturity of each note. As a sample, the complaint for the first cause of action is here set down:

"1. That on April 7, 1920, defendant made, executed and delivered to plaintiff his promissory note in writing wherein and whereby he promised and agreed, for value received, to pay to said plaintiff the sum of $12,289 fifteen years after date with interest thereon at the rate of 6 per cent per annum from date until paid.

"2. That under and by virtue of the terms of said promissory note, said defendant promised and agreed to pay the interest thereon semi-annually and if not so paid, then the whole sum of both principal and interest to become immediately due and collectible, at the option of the holder of said note, and that in case suit or action be instituted to collect said note, or any portion thereof, said defendant further promised and agreed to pay, in addition to the costs and disbursements provided by statute, such additional sum as the court might adjudge reasonable for attorney's fees in said suit or action.

"3. That said defendant has failed to pay the third semi-annual installment of said interest, which fell due on October 7, 1921, and that by reason thereof, said plaintiff elects to and does hereby exercise her option of declaring the whole sum of both principal and interest of said note due and collectible and does hereby declare the whole sum of both principal and interest due and collectible.

"4. That said note, and the whole thereof, is now due and unpaid, with interest thereon, at the rate of 6 per cent per annum, from April 7, 1921.

"5. That $1,228.90 is a reasonable sum to be allowed as attorney's fees in this action on said note."

Except as to the four notes maturing five, six, seven and eight years after date, the answer is the same as to each of the notes in suit.

Referring to the first cause of action, the complaint for which has been already quoted, the answer ad-

mits the execution and delivery of the note and its terms as stated in the complaint. As to the failure to pay the semi-annual installment of interest due October 7, 1921, and the election of the plaintiff to declare the whole sum of principal and interest due and collectible, the answer denies the same except as further stated.

The allegations about attorney's fees and the conventional maturity of the note are denied. For new matter in defense against the first cause of action the answer reads thus:

"1. That prior to October 7, 1921, the note mentioned in said cause of action not being then in Tillamook, Oregon, defendant, for the convenience of plaintiff, drew in favor of plaintiff a draft upon a bank where defendant had sufficient funds to meet the same, for the amount of interest on the note described in said cause of action, and mailed the same in the regular course of business to the plaintiff at Portland, Oregon, but that the letter containing said draft was apparently not received by plaintiff.

"2. That the note described in the complaint is by its express terms a negotiable instrument, payable in Tillamook, Oregon; that said note was not in Tillamook, Oregon, for some time before nor for some time after October 7th, the day when the interest fell due, and was not then nor at any time presented to defendant for payment of the interest thereon, nor was demand then or at any time made upon defendant for payment of the interest due October 7th on said note. Defendant was able, ready and willing to pay the interest on said note at Tillamook, Oregon, on the seventh day of October, 1921, and at any time thereafter.

"3. That immediately upon learning that the remittance made by defendant to plaintiff for the interest due upon said note had not reached plaintiff, and on October 19th, 1921, defendant tendered to plaintiff the amount of said interest in legal tender

of the United States, which tender plaintiff refused without assignment of any reason for such refusal. Defendant herewith deposits such interest into the registry of this court and tenders the same to plaintiff.''

As to the four notes maturing five, six, seven and eight years after date, the denials are the same as in the other answers.

For new matter as defense against those four notes, the defendant in each instance answers as follows:

''Defendant alleges that on or about the sixth day of October, 1920, the plaintiff, for a valuable consideration, sold, assigned and transferred unto the Tillamook County Bank the note described in said * * cause of action and indorsed and delivered said note to said Tillamook County Bank, which, by reason thereof, ever since has been and now is the owner and holder of said note.

''For a second answer and defense to said * * cause of action, defendant alleges that heretofore and on the nineteenth day of October, 1921, defendant paid to the Tillamook County Bank the interest due on said note and that said Tillamook County Bank accepted and received said interest and indorsed the same upon the note.''

The general demurrer of the plaintiff to the new matter answering the complaint as to the first seven causes of action was overruled. The reply traversed all the new matter in each of the eleven answers except in unimportant particulars and averred new matter designed to show that the defendant, by his previous conduct, had waived presentation of the note to him for payment of the semi-annual interest due October 7, 1921, and which is not necessary to be considered here. The following is a copy of the note relied upon in the first cause of action:

"$12,289.00.    Tillamook, Oregon, April 7th, 1920.

"Fifteen years after date, without grace, I promise to pay to the order of Emma Harrison at Tillamook, Oregon, Twelve thousand two hundred eighty-nine & 00/100 DOLLARS in Gold Coin of the United States of America of the present standard value, with interest thereon in like Gold Coin at the rate of six per cent per annum from date until paid, for value received. Interest to be paid semi-annually and if not so paid, the whole sum of both principal and interest to become immediately due and collectible, at the option of the holder of this note. And in case suit or action is instituted to collect this note, or any portion thereof, I promise and agree to pay, in addition to the costs and disbursements provided by statute, such additional sum, in like Gold Coin, as the Court may adjudge reasonable, for Attorney's fees to be allowed in said suit or action. Privilege is reserved to pay the principal or any part of this note, on any interest-paying date, by giving 30 days' notice.

"F. R. BEALS."

Reduced to its lowest terms, the plaintiff by this action seeks to enforce the acceleration clause in the notes because of the failure of the defendant to pay the semi-annual installment of interest due October 7, 1921, and the defendant is resisting the plaintiff's contention on the ground that he had tendered the interest due both at the time it matured and the next day after the action had been commenced.

At the trial, the court instructed the jury in substance that if they found from the evidence that on October 7, 1921, at Tillamook City, Oregon, the defendant was ready, able and willing to pay the interest on the notes described in the first seven causes of action and that the notes were not then at Tillamook City, the defendant's ability, readiness and willingness to pay the interest would be equivalent to

an actual tender of the installment of interest then due and would prevent the defendant from being in default and further, that such conditions would prevent the plaintiff from exercising the option mentioned in the notes because the option in fact would not exist.

1. At the outset, we remember that a promissory note is an agreement in writing by which the maker promises to pay a certain sum of money absolutely and at all events: 6 Words & Phrases, 5676. Unless otherwise provided in the instrument, as between himself and the payee of the note, the maker assumes to perform all the affirmative acts required for the fulfillment of the contract. As said in *Loan & Trust Co.* v. *Gill*, 2 Kan. App. 488 (43 Pac. 991):

"The rights of the parties in this case grow out of a contract which they voluntarily entered into. It is not like a case of forfeiture where the party who exercises the option may derive large benefits from it * * The exercise of the option does not affect the rights of the parties in any manner, except merely as to the time of payment. The agreement of the mortgagor to pay the interest at stated times is a continuing obligation which can be discharged, within the terms of the contract, only by actual payment."

2. The principle as to forfeiture is thus stated in *Lee* v. *Security Bank etc. Co.*, 124 Tenn. 582 (139 S. W. 690):

"The question is not whether the court will enforce a penalty or forfeiture, since no such matter is involved, but whether it will recognize a contract which the parties have made for advancing the day of payment upon a contingency which they have provided for in terms agreed upon between them."

In his concurring opinion in *Adams* v. *Rutherford* in 13 Or. 87 (8 Pac. 896), Mr. Justice LORD clearly

points out that an acceleration clause is not one providing for a forfeiture but that it is one of the terms of the contract to be construed like any other of its conditions and enforced accordingly: See, also, *Whitcher* v. *Webb,* 44 Cal. 127.

Section 7862, Or. L., reads thus:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is by its terms payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part; but except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

3. By the terms of that section, presentment for payment is required only for the purpose of charging the drawer and indorsers and not in any event to charge the maker. The instruments sued upon here are not bills of exchange. They are promissory notes. No indorsers are involved. The issue is drawn between the original parties, the maker and the payee. The maker is "the person primarily liable on the instrument." In the face of the statute the court was in error in charging the jury that a presentment of this note to the defendant maker was necessary before the plaintiff could exercise the option provided for in the instrument. Having promised in writing to pay a certain sum of money absolutely and at all events the defendant must either show that he has paid according to the terms of the instrument or that he has some valid excuse affecting the payee, showing why payment has not been made.

4. The first affirmative allegation of the answer about sending a draft to Portland which was not received by the plaintiff may as well be dismissed from

consideration. It is there stated that this draft was sent prior to October 7, 1921. It is immaterial because the defendant was not required or privileged to pay anything prior to "October 7" and the fact that it was not received makes that whole transaction negligible. Moreover, the defendant himself testified substantially that that averment was erroneous and that he did not send the draft to the plaintiff.

5, 6. In the second paragraph of the affirmative answer it is stated "that said note was not in Tillamook, Oregon, for some time before nor for some time after October 7th." As against a demurrer, that allegation means no more than that the note could have been absent from Tillamook from September 1st to October 1st and from October 8th to October 31st and still have been in Tillamook on October 7th. Further averring, it is said that "defendant was able, ready and willing to pay the interest on said note at Tillamook, Oregon, on the seventh day of October, 1921, and at any time thereafter." In its primary signification, "tender" is "To produce and proffer unconditionally, as money or other specific thing, in payment or performance of an obligation": Standard Dictionary. As relates to October 7, 1921, the date of maturity of the third installment of interest, the defendant relies on the equivalent for tender described in Section 7862, Or. L. The effectiveness of that substitute for actual tender depends upon the condition expressed in the statute, "if the instrument is by its terms payable at a special place." If the note under consideration is not payable at a "special place" the statutory equivalent or substitute for tender is not applicable. We have seen that by the admitted terms of the note in each instance it was payable "at Tillamook, Oregon." In

*Hutchison* v. *Crutcher,* 98 Tenn. 421, 435 (39 S. W. 725, 39 L. R. A. 89), the court said:

"The words 'place of payment' mean a house, bank or counting-room, store or place of business where the holder can present the note, when the maker can deposit or provide funds to meet it and where a legal offer to pay can be made."

In *Greenlief* v. *Watson,* 83 Me. 266 (22 Atl. 165), the court had under consideration a statute of that making it incumbent upon a plaintiff to allege and prove that a demand had been made for payment of a note payable at a place certain, and held that:

"A promissory note payable at 'Mt. Vernon' is not payable at a place certain within the meaning of Rev. St., Chap. 32, § 10, so as to require that a demand of payment should be averred and proved as a prerequisite to the maintenance of a suit thereon."

The same doctrine was held in *Montross* v. *Doak,* 7 Rob. (La.) 170 (41 Am. Dec. 278). In *Corbett* v. *Ulsaker Printing Co.* (N. D.), 190 N. W. 75 (24 A. L. R. 1047), the identical question involved here was before the court for decision. Under a statute of that state, in terms identical with our own, the court there said:

"It is argued that as the note was payable 'at Fargo, North Dakota,' it was payable at a 'special place' within the meaning of this statute, and hence that the trial court should have allowed the defendant to establish its ability and willingness to pay the notes as they fell due, in order that it might be considered to have tendered payment, and, having in legal effect tendered payment, to have rendered inoperative the express condition in the contract authorizing the vendor to declare the balance due.

"We are clearly of the opinion that the designation of a city in which the instrument is payable is not the designation of a 'special place' within this provision of the statute. The purpose of the statute

seems to us to be obvious. It subserves the convenience of both parties in that it contemplates the designation of a particular place where the holder of the instrument, on the one hand, may go with the expectation of receiving the amount due, or of ascertaining that the instrument will not be met, thus obviating the necessity of seeking out the obligor; while on the other hand, it enables the obligor to make provision against default or dishonor by having the funds at such place, thereby stopping interest and obviating costs. The clear purpose of the statute would not be carried out, in our opinion, by giving to the expression 'a special place' a meaning which would make it coextensive with the borders of a city.''

The note in question in *Stowe* v. *Colburn,* 30 Me. 32, was payable "at Boston." The court held that the statute did not apply to such a case and that the words, "at Boston" did not specify "a place certain." In discussing the question, the court said:

"On a fair construction of a note payable at a place certain and at a fixed future time without the words 'on demand' those words are not implied and a note since the statute is an essentially different contract from the one in which those words are inserted. In a note of the latter description, a demand is a condition precedent to the right to commence and maintain an action thereon. The import of those words is that the maker shall have an opportunity to fulfill his promise upon notice at the time and place. But in one of the former character he reserves to himself no such privilege; the promise is absolute and unconditional that he shall make the payments at the time and place mentioned.''

The defendant relies strongly on *Bardsley* v. *Washington Mill Co.,* 54 Wash. 553 (103 Pac. 822, 132 Am. St. Rep. 1133). In that case the note in suit was dated, "Spokane, Wash., December 21, 1904," and by its terms was "due December 21, 1909, at Spokane,

Wash." It had in it an acceleration clause like the one here involved. Even there, in discussing the effect of the provision mentioned, the court said:

"This is not a question of charging the company primarily liable on this note as to its ultimate liability. The appellant would not be released from liability to pay the principal and interest thereon by any failure to present the note or demand payment at any particular time or place. This would be true whatever construction might be placed upon its terms as to place or payment."

The court, however, went on further and placed its refusal to enforce the option to declare the whole sum of principal and interest due and collectible on default of payment of an installment of the interest on the ground that it was implied in the absence of any other provision that the note was payable at the place of business or residence of the maker in the city where due and required that the note should be there presented before the acceleration clause could be enforced. Giving that discussion its utmost value, it is not here applicable for the reason that it is not stated anywhere in the pleadings in the instant case that the maker of the note had a place of business or residence in Tillamook so that presentment could have been made there even if presentment were required. The statute, however, says:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument."

If the maker, who is certainly primarily liable on the note, is liable at all, he is liable for the performance of all the terms thereof. He has agreed to meet all those terms. One of them is that if the interest is not paid when due, the whole sum of both principal

and interest shall immediately become due and collectible at the option of the holder of the note. He is as liable to perform that condition as he was liable to pay at all. The precedents already cited give to that provision as much dignity and absolute effectiveness as any other of the terms of the note. As to presentment to a maker, the statute has not made any exception requiring it for enforcement of the acceleration clause any more than for any other of the terms of the note and we cannot supply such an exception. The plain import of the statute is that no presentment is necessary in order to enforce any of the provisions of the instrument against the maker who is primarily liable thereon. This Washington case is distinguished in *James* v. *Brainard-Jackson & Co.*, 64 Wash. 175 (116 Pac. 633), by Mr. Justice Fullerton saying of the holder, "he was not obligated to go to the maker and make a formal demand and such is not the holding in the case of *Bardsley* v. *Washington Mill Co.*, 54 Wash. 553 (103 Pac. 822, 132 Am. St. Rep. 1133)." It is also criticised and disregarded in *Corbett* v. *Ulsaker Printing Co., supra.* With due respect to the highest tribunal of our sister state, it would seem that it has gone out of its way to relieve a contracting party from his express obligation and has invented a way of escape for him from the consequence of his own agreement. The conclusion is inevitable that the note was not payable "at a special place" within the terms of the statute so as to let in the conventional equivalent for tender described in the enactment. It is not reasonable to hold that merely because the maker may have had money in the city or town named in the instrument, and may have been somewhere within its corporate limits, he should be able to bind the payee by his

mere undisclosed state of mind, that of being willing to pay if called upon for that purpose. The maker is the actor named in the note, who pledges performance on his part. The payee is entitled to be passive and no action on his part is required as between himself and the party primarily liable on the instrument.

In *McIntyre* v. *Michigan State Ins. Co.*, 52 Mich. 188 (17 N. W. 781), the presumption that the note is payable at the residence of the maker where no place is specified was limited in its effect to the matter of holding the indorsers and the presentment to the maker was held to be unnecessary in order to charge him. The court there said:

"The instrument might have been drawn payable at the plaintiff's residence but he did not elect to require it. He bound himself to seek the payee or holder and mere possession of the money at his house with the will to pay it could avail nothing in point of law. His undertaking went further. No demand on him by the defendant was necessary to make the note either due or suable. Mere nonpayment was default, and no facts arose to excuse it."

7. The conclusion is that the conventional equivalent of tender allowed by the statute cannot avail the defendant in this instance. What, then, is the situation? The plaintiff began action by filing her complaint on October 18, 1921. The third installment of interest was confessedly due on October 7th, eleven days before commencement of the action. No payment of the interest had been made. No actual tender had been made of anything due on the note and as we have seen, the statutory equivalent therefor is not an element in the case. It remains to determine whether the plaintiff had the right to and did exercise her option to declare the whole sum of

111 Or.—37

both principal and interest due and collectible on account of the default in the payment of the interest.

The statute obviates the necessity of any demand upon the maker for any payment. The acceleration clause, while not self-executing as we have held in *Nickell* v. *Bradshaw*, 94 Or. 580 (183 Pac. 12, 11 A. L. R. 623), is nevertheless applicable at the behest of the plaintiff whenever there is a default in payment of interest. In *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510, the acceleration clause was contained in the mortgage securing the notes, discussing which the court said at page 520 of the report:

"It is further insisted that the judgment and order of sale for the whole amount of the debt is erroneous, because the insurance company gave no notice of the exercise of the option under the stipulation in the mortgage before bringing suit. The mortgage makes no provision for notice of any kind. The stipulation is that upon failure to pay any or either of the interest or coupon notes, taxes, etc., as provided, 'then all of the said mortgage debt shall, at the option of the mortgagee, become due and collectible.' This provision is not by way of penalty or forfeiture, but is an agreement between the parties as to the time when the whole debt should become due and collectible. It was thus to become due, not upon notice to the mortgagor or others, but at the option, the choice, of the mortgagee. At what time or in what manner the option should be exercised was not provided for; that was left entirely with the mortgagee. It is one of the cases, we think, in which the institution of proceedings to foreclose the mortgage sufficiently shows the election to treat the whole debt as due and collectible. * * Such a notice would not have enabled appellants to prevent a judgment for the whole amount, by the payment of the coupon interest notes overdue, and delinquent taxes, if any. When the whole amount became due by the failure to pay as agreed upon, it was not in the power of appellants

to make it otherwise, except with the consent of the mortgagee. They might have paid the whole amount and thus prevented judgment and foreclosure, and this they might have done after suit was begun."

*Swearingen* v. *Lahner,* 93 Iowa, 147 (61 N. W. 431, 57 Am. St. Rep. 261, 26 L. R. A. 765), was a case where the acceleration clause was in both the note and the mortgage. The court said:

"We have, then, these two propositions for determination: 1. Was the holder of the note required to make an election, declare the notes due for the failure to pay interest, and give notice thereof to the mortgagors before commencing his suit? And 2. Did a tender of the interest due long after its maturity, but before the commencement of the suit, bar plaintiff of his right to foreclose for nonpayment of interest? * * The notes in suit leave it optional with the holder whether he will declare the whole amount of principal and interest due upon nonpayment of interest when due; and the mortgage provides that, if the mortgagor fails to pay interest on the notes promptly as the same becomes due, the notes secured shall become due and payable in thirty days thereafter, and the mortgagee, his heirs or assigns, may proceed at once to foreclose the mortgage. * * Stipulations such as are found in these notes and in the mortgage under consideration are not regarded in the nature of a penalty or forfeiture, and, for that reason, viewed with disfavor by the courts, but as agreements for bringing the notes to an earlier maturity than expressed upon their face, and are to be construed and the intention of the parties ascertained by the same rules as other contracts: *Hoodless* v. *Reid,* 112 Ill. 105; Wiltsie on Mortgage Foreclosures, § 37; Jones on Mortgages, §§ 76, 1181; *Kramer* v. *Rebman,* 9 Iowa, 114, and authorities heretofore cited. So it has been held that, after the happening of the contingency which matures the note, the mortgagee cannot be compelled to accept the interest due, and yield his claim for the whole amount: Jones on Mort-

gages, §§ 1179–1186, and cases before cited. Courts of equity have no power to relieve against the default and its consequences: *Malcolm* v. *Allen,* 49 N. Y. 448; *Bennett* v. *Stevenson,* 53 N. Y. 508; *Morling* v. *Bronson,* 37 Neb. 608 [56 N. W. 250]; *Whitcher* v. *Webb,* 44 Cal. 127. Applying these rules to the case at bar, it is clear, not only that the notes were due when the action was commenced, but that, whether due or not, plaintiff had the right, under the express provisions of the mortgage, to foreclose against all having any interest in or claim to the land; and that the tender of the unpaid interest, six months after the note matured and the right to foreclose accrued, will not defeat the action: See, also, as supporting our conclusions, *Smalley* v. *Renken,* 85 Iowa, 612 [52 N. W. 507]; *Watts* v. *Creighton,* 85 Iowa, 154 [52 N. W. 12]; *Hale* v. *Patton,* 60 N. Y. 233, 19 Am. Rep. 168.

"There remains but one question: Was plaintiff required to give defendants notice of his election before bringing suit? This precise question has never been presented to this court, although many suits of the same nature, where no notice of election had been given, have passed through without question. The Supreme Court of Nebraska has held in the case of *Morling* v. *Bronson,* 37 Neb. 608 [56 N. W. 205], that no notice other than the bringing of the suit is required. So, also, in California, it is held that no notice or demand is necessary: *Hewett* v. *Dean,* 3 Cal. Unrep. 385, 25 Pac. 753; *Sichler* v. *Look,* 93 Cal. 600 [29 Pac. 220]. These cases, it seems to us, announced the true rule. The case is plainly one of contract, and plaintiff had the right, at any time after thirty days from default in payment of interest, to exercise his option, and declare the whole amount of principal and interest due, provided the mortgagor is in no way prejudiced by his delay. Bringing the suit is a sufficient election, and is all the notice required."

In *Whitcher* v. *Webb, supra,* where the court considered the optional acceleration clause like the one here involved, it was said:

"The promise to pay the interest quarterly was absolute and the consequence of a failure upon the part of Webb to do so left it wholly optional with Whitcher to insist upon payment of the entire debt or not as he might elect. Webb was not entitled to notice in advance that if he failed to pay the interest quarterly Whitcher would insist upon his right to the whole debt; he was bound to know that that consequence might follow. * * Here, however, the plaintiff had no duty to perform to the defendant and the latter no excuse to delay the payments which he had stipulated to make or any reason to suppose that the plaintiff would not require those payments according to the terms of the contract. * * The promise is an absolute one in the first instance, to pay the interest when due and conditional in the second instance that, failing in the first, the obligor will at once be bound at the option of the creditor to pay a larger sum which larger sum is, however, nothing more than he really owes already and must, under any circumstances, sooner or later be called upon to pay."

In *Hewitt* v. *Dean*, 91 Cal. 5 (27 Pac. 423), it was held that an option to accelerate payment at the holder's election "is an absolute agreement of the makers depending solely upon such election and does not require the giving of notice before suit to foreclose." *Pizer* v. *Herzig*, 120 App. Div. 102 (105 N. Y. Supp. 38), classifies acceleration clauses into two divisions: 1. Where it rests upon default in payment of certain stipulated and previously known installments of interest or principal, and 2. Where it is based on a promise to pay taxes, the amount of which and times of payment cannot be previously ascertained. In the first, demand, a notice of and option to declare the whole sum due are not required and the act in itself is a valid exercise of the option. On the other hand,

notice is required in the second clause because neither the amount nor the time of payment can be predicted when the contract was made. In that case, it was held that tender of interest on the day suit was commenced was no obstacle to foreclosure. In *Cresco Realty Co.* v. *Clark*, 128 App. Div. 144 (112 N. Y. Supp. 550), it was held that the option may be exercised "before suit is brought or by the bringing of the suit itself, i. e., in the complaint." *Bergman* v. *Fortescue*, 74 N. J. Eq. 266 (69 Atl. 474), was a case in which it was held that the acceleration clause was not a provision for forfeiture but a stipulation for terms of credit and that the commencement of suit was an election to and did make the whole debt due. It was further decided that payment of the interest afterward did not take off the default and that it was only part payment of a matured debt. In *Hawes* v. *Detroit, F. & M. Ins. Co.*, 109 Mich. 324 (67 N. W. 329, 63 Am. St. Rep. 581), the court decided that "by the clear weight of authority, notice of election to treat the whole amount of the mortgage debt as due before proceeding to foreclose is not necessary. The procedure to foreclose sufficiently shows the mortgagee's intention." Likewise in *Warwick Iron Co.* v. *Morton*, 148 Pa. St. 72 (23 Atl. 1065), the principle is laid down that notice of the exercise of option is not required; that the suit itself is notice and the court said:

"This is not a process to enforce a forfeiture but to execute the conditions of a lawful contract."

In *Chase* v. *First Nat. Bank*, 1 Tex. Civ. App. 595 (20 S. W. 1027), the court said:

"The trustee had the power upon default in payment of the interest to exercise for his principals, and did in this case exercise for them, this right of

electing to treat the principal debt as due and by proceeding to advertise and sell the property, this purpose was manifested.''

8. We come now to the allegation of the answer that on October 19, 1921, the defendant tendered to the plaintiff the amount of interest in legal tender of the United States. The precise amount which he tendered is not stated. It is true that with the data before us of the amount, rate and time of the notes, we might calculate by mathematical process what interest was due; but in the absence of the specific statement of the amount tendered in dollars and cents, we are unable to say whether the defendant, in his computation, reached the correct result of the amount due or not: *Proebstel* v. *Trout,* 60 Or. 145 (118 Pac. 551). We have seen that the cause of action for the whole amount of the notes had accrued through nonpayment of the interest and that by commencement of the action the plaintiff had elected to exercise the option of enforcing full payment.

9. Section 574, Or. L., is as follows:

''When in any action or suit for the recovery of money or damages only, the defendant shall allege in his answer that before the commencement thereof he tendered to the plaintiff a certain amount of money in full payment or satisfaction of the cause of action or suit, and now brings the same into court and deposits it with the clerk for the plaintiff, if such allegation of tender be found true, and the plaintiff do not recover a greater sum than the amount so tendered, he shall not recover costs off the defendant, but the defendant shall recover them off him.''

This tender alleged to have been made on October 19th, was too late to give to the defendant the benefit of the statute quoted above because it was not made before the commencement of the action. Besides, he

only tendered the interest whereas not only the interest but also the principal was due as we have seen. It is not an offer of compromise such as described in Section 532, Or. L., which provides that the defendant at any time before trial may offer to allow judgment to be given against him for a certain specific sum of money. The result is that as to the first seven causes of action set out in the complaint, the court was in error in requiring a demand to be made upon the defendant to pay the interest and likewise was wrong in charging the jury that mere uncommunicated willingness to pay the interest was equivalent to a tender preventing the exercise of the option contained in the acceleration clause. The demurrer to the new matter in the answer to the first seven causes of action ought to have been sustained.

10. It remains to consider the ruling as to the defense urged against the remaining four notes. The answer alleges an assignment of those notes to the Tillamook County Bank on October 6, 1920, and that that concern has ever since had them and is now the owner and holder of the notes. There was introduced in evidence, without objection, an instrument which the plaintiff herself admitted was signed by her, as follows:

"KNOW ALL MEN BY THESE PRESENTS, That I, Emma Harrison, for and in consideration of the sum of One Dollar and other valuable considerations to me in hand paid, the receipt whereof is hereby acknowledged, do hereby bargain, sell, transfer and assign unto Tillamook County Bank four certain promissory notes, each dated April 7th, 1920, each for the sum of $1000.00, bearing interest at the rate of 6% per annum, interest payable semi-annually, and said notes maturing 5, 6, 7, 8 years after date respectively.

All of said notes being executed by F. R. Beals, of Tillamook City, Oregon.

"Said notes are transferred and assigned to the Tillamook County Bank for the purpose of securing to said bank any indebtedness incurred by Leslie Harrison on account of the purchase of the Tillamook Headlight, and said bank is hereby authorized to hold said notes as security for any loans made to said Leslie Harrison on account of the purchase of said newspaper and any renewals and extensions granted to said Leslie Harrison on said matters.

"IN WITNESS WHEREOF I have hereunto set my hand and seal this 6 day of October, 1920.

"(Signed)    EMMA HARRISON.    (Seal)"

11. The legal effect of this document, authenticated as it was by the admission of the plaintiff herself, was sufficient to transfer to the bank the property in the quartet of notes, and possession having been admittedly delivered to the bank, it became the holder thereof. The plaintiff was no longer the holder and within the terms of those notes she was not in position to exercise option to declare them all due, for it is said in the notes themselves that in default of payment of interest, the whole sum of both principal and interest shall be immediately due and collectible "at the option of the holder of this note." At the beginning of the action, and so far as appears in the record, she was not the holder of these notes or in position to exercise option therein contained: *LaPlant* v. *Beechley*, 182 Iowa, 452 (165 N. W. 1019). It was the province and the duty of the court to declare to the jury the legal effect of the admitted document of assignment already quoted: Or. L., § 136. There was no error in its construction thereof. Judgment ought to have been entered abating the action as to the eighth, ninth, tenth and eleventh causes of action.

The result is that the judgment must be reversed
and the cause remanded for further proceedings.

REVERSED AND REMANDED. REHEARING DENIED.

McBRIDE, C. J., and BROWN and RAND, JJ., concur.